Filed 1/5/22  P. v. Knox CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075875 |
| v. | (Super.Ct.No. RIF2000629) |
| OLLIE JOSEPH KNOX, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ollie Joseph Knox, Jr., of assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)  He was sentenced to 13 years in state prison.

1

On appeal, Knox argues that the trial court violated his right to confrontation by not allowing cross-examination about the probation status of the victim, who also was the lone witness to the attack. Knox also argues that the trial court prejudicially erred by sustaining various objections to defense counsel's closing argument. We conclude that any error was harmless, and we accordingly affirm the judgment.

BACKGROUND

A. *The Incident*

One night in November 2019, Miles S. encountered Lauren, a friend, at a bus stop. Lauren became angry at Miles and threw various items at him, including a pole and a wrench. None of the items touched Miles. Lauren departed on a bus and left various items on the ground. Miles looked through those items.

While Miles was looking through the objects that Lauren had left behind, Knox walked up and claimed that the items belonged to him. Miles and Knox had previously met but were not friends. Knox asked Miles what he was doing. Knox picked up a pole from the ground and swung it at Miles. At trial, Miles described the pole as being approximately 12-inches long, slanted or curved, silver, and metal.[1]

Knox held the pole with his right hand and swung it toward Miles. Miles used his left arm to block the pole from hitting him in the face. The pole struck Miles's arm and

_____

[1]     Miles also described the object that Knox swung at him as being "just like a pole—it was like—it was like a—you know if you have a tire, and—one of those like that." Asked by the prosecutor if he recognized a particular exhibit—a silver metal pole, Miles initially said that he did and then recanted because he said it was dark when Knox attacked him.

2

caused him pain. Miles wanted to get away from Knox quickly to avoid being hit again. Before he walked away, Miles squatted down and picked up a can of beer, which he did not spill as he walked away.

Immediately after the incident, at around 5:15 p.m., Miles walked into a local Walgreens store, where he called 911. Miles was holding an open 25-ounce can of malt liquor. Earlier that day, at 7:00 a.m., Miles had consumed another 25-ounce can of malt liquor. Miles claimed that he had not been affected by the alcohol he had consumed that day. The Walgreens store manager stood at arm's length from Miles and smelled "beer on him."

After Miles spoke with the 911 operator, the store manager asked him to wait outside. Miles grabbed the phone from the manager and threw it onto the counter. The manager worried that Miles was going to hit him, but Miles did not.

Law enforcement officers located Miles in the parking lot of a nearby hospital. Miles gave the officers a description of Knox, and one officer went to look for Knox. The other officer remained with Miles to interview him. Miles described what Knox had done to him. He described the weapon Knox used as a 12- to 18-inch silver metal pole, which was like a crowbar but straight.

The officer who remained with Miles could smell alcohol on his breath but did not believe that Miles appeared to be under the influence. Miles's eyes were not red, and he was not slurring his speech or stumbling when he walked. The officer interviewed Miles for approximately 10 to 15 minutes.

3

That officer took various photographs of Miles, including a picture of the injury on his left arm. Miles had a two-inch laceration on his left arm, which was swollen and had fresh blood and a golf ball-sized protrusion. The officer opined that the injury was consistent with Miles's description of the incident. Miles had no visible injuries on his hands. Miles declined medical assistance. Defense counsel asked Miles if it appeared from a photograph of the injury that the wound had a scab. Miles denied that there was any scab.

The other law enforcement officer located Knox sitting at a nearby bus stop. There was a two-foot metal pipe lying on the ground behind Knox. From the back of a patrol car, Miles identified Knox as the person who hit him with the pole.

In 2011, Miles pled guilty to misdemeanor assault of a firefighter. In 2016, he pled guilty to misdemeanor vandalism for punching and breaking a window in a municipal bus. On cross-examination, Miles admitted that "an honest person" would not "commit a battery on a firefighter" or "maliciously destroy property belonging to someone else." Miles claimed to have never lied.

Miles was jailed for the week before he testified to ensure that he would appear at trial. He had previously failed to appear when subpoenaed. Miles understood that after he testified, he would be released from custody. Miles confirmed that he did not feel any pressure "to please anybody or make anyone happy" with his testimony.

Miles was "very upset" when the court ordered him detained because he did not want to be detained in jail. When Miles appeared before the judge, Miles used the "F-

4

word," "the MF-word," and "the N word." Miles then said something like "'I'm going to say he's guilty. Since you let me sit in here, he's going to jail.'" Miles explained that he was "just blurting things out" in court.

B. *Prior Similar Incidents*

One night in 2016, Knox crossed paths with a stranger walking along a sidewalk. The man invited Knox to walk ahead of him, and Knox responded by hitting the man on his head, causing the man to fall and to lose consciousness. Law enforcement officers found Knox with a plastic pipe measuring 18 inches in his back pocket.

In 2019, Knox lived with a man who used a wheelchair. One day, the man got stuck while passing through a sliding glass door, and Knox struck the man on his shoulder blade with a two-foot wooden dowel, causing the man to be injured.

C. *Defense Theory of the Case*

Defense counsel argued to the jury that the evidence demonstrated that Knox did not assault Miles and that Miles was lying. Counsel argued that Miles was initially motivated to call law enforcement and to lie about Knox attacking him because of the disagreement between the two men about who owned the belongings.

Counsel also argued that Miles generally lacked credibility, as evinced by his prior crimes and his claim of never having lied, which counsel argued was preposterous. Counsel also pointed out that Miles had started drinking at 7:00 a.m. and walked into Walgreens after the incident with an open can of malt liquor. As to Miles's behavior at Walgreens, counsel argued: Miles "walks into Walgreens, helps himself to a telephone.

5

None of us did that when we walked into this building *because we're of sober mind*." (Italics added.)

Counsel argued that the following evidence demonstrated Miles's untruthfulness: Miles changed his story about the object Knox wielded and could not identify the object in court. Because Miles picked up his beer can before walking away and did not spill it while fleeing, he must not have been particularly fearful of Knox, which he would have been if the events had transpired as Miles claimed. The outburst Miles had in court the week before testifying showed that Miles "was really angry. And you learned and we proved to you that because of his anger, it was his plan to say [Knox] is guilty. You learned that [Miles] said, I'm going to say he's guilty since you let me sit in here; he's going to jail." In other words, Miles was "not saying, I'm going to tell the truth," but instead was "saying, I'm going to say he's guilty."

Counsel also suggested that Miles had lied about how he was injured, urging the jury to examine the photographic evidence to discern whether the injury appeared older than Miles claimed. He suggested that Miles had sustained the injury when Lauren threw items at him.

DISCUSSION

A. *Confrontation Clause*

Knox argues that the trial court prejudicially erred by ruling that Miles's probationary status was not relevant. Additionally, Knox argues that excluding cross-examination on Miles's probationary status violated his constitutional right of

6

confrontation.  We agree that the evidence is relevant but conclude that the error was not prejudicial and did not amount to a constitutional violation.

1.  *Relevant Proceedings*

Knox moved in limine to be able to cross-examine Miles about his being on probation.  At a hearing on the motion, the prosecutor confirmed that Miles was on misdemeanor probation and there was an outstanding bench warrant for him in that case for a pending probation violation.  Defense counsel argued that Miles's probationary status biased him in favor of aiding the prosecution because he might be concerned that his status would be affected if he did not testify favorably for the prosecution.  The prosecutor disagreed and argued that Miles's probationary status was not relevant because she had not offered him immunity for his testimony or even discussed with him the matter of his outstanding probation violation.

The trial court denied the motion, concluding that Miles's status as a probationer was not relevant given that he called 911 after the assault and thereby invited law enforcement into his life.  The court explained that there was no "nexus between those facts and concern that somehow what [Miles] says in court is going to affect his status."

2.  *Analysis*

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'"  (*Davis v. Alaska* (1974) 415 U.S. 308, 315 (*Davis*).)  Exposing "a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-

7

examination." (*Id.* at p. 316.) The confrontation clause does not prevent "a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679 (*Van Arsdall*).) Trial judges instead retain wide latitude "to impose reasonable limits on such cross-examination" (*ibid.*; *People v. Quartermain* (1997) 16 Cal.4th 600, 622-623 (*Quartermain*)), such as by excluding otherwise relevant evidence under Evidence Code section 352 (*People v. Harris* (1989) 47 Cal.3d 1047, 1090-1091). A "limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*Quartermain*, *supra*, at pp. 623-624; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 208; *People v. Williams* (2016) 1 Cal.5th 1166, 1192; *Van Arsdall*, *supra*, at p. 680.)

Knox argues that the trial court erred by concluding that Miles's probation status was not relevant and that excluding cross-examination about it amounted to a per se violation of his right to confrontation. We agree that the trial court erred by sustaining the relevance objection. Evidence relating to a witness's credibility is relevant. (Evid. Code, § 210.) Miles's probation status was relevant because it demonstrated that he was particularly vulnerable to being unduly influenced by the prosecution. (*Davis*, *supra*, 415 U.S. at pp. 317-318.) Moreover, Miles could believe that if he testified unfavorably to the prosecution it could result in adverse consequences related to his probation. (*People*

8

*v. Adams* (1983) 149 Cal.App.3d 1190, 1193.) We nevertheless conclude that the evidentiary error did not violate Knox's right to confrontation (*People v. Hillhouse* (2002) 27 Cal.4th 469, 494) and was not otherwise prejudicial (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

There was extensive other evidence attacking Miles's credibility. Knox admitted that he was drinking alcohol when the incident occurred. He also admitted having been convicted of two misdemeanors stemming from violent behavior, and he admitted that an honest person would not commit those crimes. Most remarkably, Miles admitted that during an emotional outburst in court the previous week, he had stated that he should just say that Knox was guilty. As defense counsel argued to the jury, Miles's statement implied that his testimony on Knox's guilt would not necessarily be truthful, and he instead would say Knox attacked him just to be released from custody.

From all of that evidence, the jury could reasonably infer that Miles lacked credibility in general and that he lied about Knox attacking him. Moreover, the jury could infer that Miles already had an incentive to placate the prosecutor because his release from jail was contingent upon his testimony.

Because of the considerable evidence attacking Miles's credibility, a reasonable jury would not have received a significantly different impression of Miles's credibility had he been cross-examined regarding his probationary status. (*Quartermain*, *supra*, 16 Cal.4th at p. 624; *Van Arsdall*, *supra*, 475 U.S. at p. 680.) We accordingly conclude that

9

the trial court did not violate Knox's constitutional right to confrontation by excluding such cross-examination.**2** (*Quartermain*, at p. 624.)

Moreover, the evidentiary error in concluding the testimony was not relevant was not prejudicial under the harmlessness standard of *Watson*. (*People v. Lucas* (2014) 60 Cal.4th 153, 263 ["state law error in admitting evidence is subject to harmless error analysis under *Watson*"], overruled on another ground by *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19.) Miles's credibility was pivotal, because he was the victim of and the lone witness to the assault. Despite all of the impeaching evidence, the jury found Knox guilty and thus necessarily found Miles credible. For the same reasons that a reasonable jury would not have received a significantly different impression of Miles's credibility absent the error, it is not reasonably probable that the jury would have reached a result more favorable to Knox absent the error. We accordingly conclude that the error was not prejudicial.

B. *Defense Closing Argument*

Knox argues that the trial court prejudicially erred by sustaining numerous objections to defense counsel's closing argument on the grounds that counsel was speculating, relying on facts not in evidence, and misstating the law on the standard of proof. The arguments lack merit.

---

**2** In his reply brief, Knox also argues that the purported error was the exclusion of cross-examination about both Miles's probation status and the pending probation violation. Our conclusion remains the same. Given the extensive evidence of impeachment, there is no reasonable probability that the jury would have received a significantly altered impression of Miles's credibility if he was cross-examined about his probation status *and* the existence of a pending probation violation.

1. *Legal Framework*

"Criminal defendants enjoy a constitutional right to have counsel present closing argument to the trier of fact." (*People v. Simon* (2016) 1 Cal.5th 98, 147 (*Simon*); *Herring v. New York* (1975) 422 U.S. 853, 858–859.) That right, however, is not limitless. (*Simon*, *supra*, at p. 147.) Trial judges retain broad discretion to control the scope of a defendant's closing argument. (*Ibid.*) "[C]ounsel may not state or assume facts in argument that are not in evidence." (*People v. Stankewitz* (1990) 51 Cal.3d 72, 102.) A defendant's right to present a defense does "not include a right to present to the jury a speculative, factually unfounded inference." (*People v. Mincey* (1992) 2 Cal.4th 408, 442.) We review for abuse of discretion the trial court's decision to limit defense counsel's closing argument. (*Simon*, at p. 147.) No abuse of discretion occurs when the court's limitation on defense counsel's argument has not precluded the defendant from conveying his or her central point. (*Id.* at p. 149; *People v. Marshall* (1996) 13 Cal.4th 799, 854.)

In addition, defense counsel may not misstate the law during closing argument. (*People v. Sudduth* (1966) 65 Cal.2d 543, 548.) We independently review whether counsel accurately stated the law. (*People v. Cromer* (2001) 24 Cal.4th 889, 893-894.)

2. *Abiding Conviction*

Knox argues that the trial court prejudicially erred by striking his attorney's explanation of the term "abiding conviction" during closing argument, which could have misled the jury about the standard of proof. We conclude that any error was harmless.

11

At the parties' request, the trial court instructed the jury on reasonable doubt with CALCRIM No. 220: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." The instruction mirrors Penal Code section 1096, which defines reasonable doubt as follows: "'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.'" No further instruction defining the term "abiding conviction" was given. The court was not required to give any additional instruction on reasonable doubt. (See Pen. Code, § 1096a ["In charging a jury, the court may read to the jury [Pen. Code, §] 1096, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given"].)

During closing argument, defense counsel argued: "You're given an instruction that proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. Abiding is—means enduring; it means steadfast. In other words, abiding is something that's long-lasting. That means you got to be sure today, tomorrow, next week." The prosecutor objected that defense counsel misstated the law, and the trial court sustained the objection. Defense counsel then stated, "Abiding means you got to be pretty sure."

12

In rebuttal, the prosecutor read the definition of reasonable doubt from CALCRIM No. 220 and stated: "That's the law. And that law here has been met."

Assuming for the sake of argument that the trial court erred by sustaining the objection, Knox has not demonstrated that the error prejudiced him. (*Watson*, *supra*, 46 Cal.2d at p. 836.) We reject Knox's argument that we should apply the stricter harmlessness standard of *Chapman v. California* (1967) 386 U.S. 18, 24 to determine whether this error was prejudicial. The only authority he cites to support this argument is *Conde v. Henry* (9th Cir. 1999) 198 F.3d 734, which is not on point. In *Conde v. Henry*, defense counsel was prevented from presenting the defense theory of the case (*id.* at p. 739), which is not similar to preventing counsel from describing a legal standard that the trial court properly instructed the jury on, as happened here.

It is undisputed that the court correctly instructed the jury with CALCRIM No. 220 on the standard of proof. In addition, the court did not give the jury any additional instruction on the subject, and it was not required to (Pen. Code, § 1096a). We presume that the jury followed the instruction given. (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 271-272 (*Silveria*).) Moreover, "abiding" is not a technical legal term. As Knox otherwise argues, the definition of "abiding" proffered by defense counsel encompassed the ordinary meaning of the word—that is, abiding means "enduring" or "continuing for a long time." (Merriam-Webster Dict. Online (2021) <https://www.merriam-webster.com/dictionary/abiding> [as of Nov. 4, 2021].) We presume that the jury understands "words according to their ordinary meaning." (*Hutson*

13

*v. Southern California Ry. Co.* (1907) 150 Cal. 701, 709; *People v. Spurlock* (2003) 114 Cal.App.4th 1122, 1131.) The jury also was instructed that it was required to follow the law as explained by the judge and not the attorneys. (CALCRIM No. 200.) We presume that the jury followed this instruction too. (*Silveria*, *supra*, at p. 271.) In light of these instructions, we presume that the jury would not have taken defense counsel as the ultimate authority on the burden of proof and instead would have followed the instruction given by the judge and would have understood the words therein to carry their ordinary meaning.

Moreover, given that the jury found Miles credible, there was overwhelming evidence of Knox's guilt. Miles related that Knox attacked him with a silver metal pole and injured his arm, so Miles called 911. After Miles described Knox and the attack to law enforcement officers, a law enforcement officer found Knox sitting at a nearby bus stop with a metal pipe lying on the ground behind him. Miles identified Knox as the perpetrator. There was evidence that Knox attacked other men with similar objects when unprovoked. As we have explained *ante*, the jury's finding of guilt demonstrates that the jury found credible Miles's account of the attack and identification of Knox as the attacker. Knox provided no theory upon which the jury could acquit him if the jury found Miles credible on these points. Given the totality of the evidence and the instructions given to the jury, we see no reasonable probability that Knox would have obtained a more favorable result if the trial court had not sustained the prosecutor's objection to defense counsel's statements concerning the term "abiding conviction."

14

For all of these reasons, we conclude that any error in sustaining the prosecutor's objection to defense counsel's explanation of the term "abiding conviction" was harmless.

### 3. *Fact-Based Objections*

Knox argues that the trial court violated his right to effective assistance of counsel by sustaining four objections to defense counsel's closing argument regarding counsel's characterization of the evidence. We are not persuaded. In each instance, defense counsel was otherwise permitted to make the same central point.

#### a. *First Objection*

Defense counsel argued that Miles's statement that he was "going to say [Knox is] guilty" was sufficient by itself for the jury to find Knox not guilty, because it demonstrated what was "going on in [Miles's] mind when he makes those statements. It tells you and it shows that he believes he has options about what he's going to say. And that he had a plan because of his anger, because he had to sit in jail, he had a plan to say that [Knox is] guilty." The trial court sustained the prosecutor's objection that the argument called for speculation and instructed the jury "to disregard that comment."

Elsewhere in his argument, defense counsel made exactly the same point without objection: "And you learned and we proved to you that because of his anger, *it was [Miles's] plan to say [Knox] is guilty*. You learned that [Miles] said, I'm going to say he's guilty since you let me sit in here; he's going to jail." (Italics added.) Counsel explained that Miles's statement was different from saying, "I'm going to tell the truth."

15

There is no meaningful distinction between the stricken statement on this point and the statements made without objection. Defense counsel was able to relate to the jury that Miles's statement in court the week before trial demonstrated that Miles was angry about being placed in custody and planned to testify to Knox's guilt, regardless of the truthfulness of such testimony. Counsel thus made his central argument to the jury that Miles's outburst undermined the truthfulness of his testimony. We consequently conclude that sustaining the objection did not amount to an abuse of discretion. (See *Simon*, *supra*, 1 Cal.5th at p. 149.)

b. *Second and Third Objections*

Defense counsel also argued that Miles's account of the incident lacked credibility because Miles drank so much alcohol on the day of the incident, starting at 7:00 a.m. Counsel then stated, "And we all know, everyone knows, you know when somebody starts drinking at 7:00 a.m. what they're doing with their day." The prosecutor objected that the comment called for speculation. The trial court sustained the objection and instructed the jury "to disregard that comment by" defense counsel and not to speculate.

The trial court also sustained an objection to defense counsel's characterization of Miles's behavior at Walgreens depicted in the video recording. Counsel argued: "And you could just tell by his mannerisms on the video and the way he's interacting that he's intoxicated. You can tell this because he's got exaggerated gestures; he's holding out his arms, right? He's angry; right? He's having a hard time controlling that anger, which

16

shows that he's under the influence." The prosecutor objected that counsel was arguing facts not in evidence, and the trial court sustained the objection.

The central point of these arguments was that Miles's account of the attack lacked credibility because Miles was drunk. Knox's counsel otherwise argued without objection that Miles started drinking in the morning and that his behavior showed he was not sober when he entered Walgreens holding an open can of malt liquor after the attack. Counsel therefore conveyed his central point that Miles's account of the attack lacked credibility because Miles was intoxicated. We accordingly conclude that the trial court did not abuse its discretion by sustaining these objections. (*Simon*, *supra*, 1 Cal.5th at p. 149.)

c. *Fourth Objection*

Lastly, the trial court sustained the prosecutor's objection to the following argument from defense counsel regarding the injury Miles sustained: "When you look at the evidence, you'll see that the injury is scabbed over. It's scabbed over. Scabs do not form in five minutes. They take time to form. When you look at this exhibit, look at it closely. You'll notice that there's a bruise in this area here. Bruises don't form in five minutes." After the trial court sustained the prosecutor's objection that defense counsel related facts not in evidence, defense counsel continued: "You can see what the evidence shows. You need to ask yourself whether this injury looked like it happened as a result of something that happened five or ten minutes ago, or does it look old? If you agree it looks old, stop there. Not guilty. . . . [Miles] did not tell you the truth about how he got this injury." As with the other sustained objections, defense counsel conveyed his main

17

point about the photographic evidence of Miles's injury—Miles did not sustain the injury as recently as he claimed.  Because Knox's counsel was able to convey this point, we again conclude the trial court did not abuse its discretion by sustaining the objection. (*Simon*, *supra*, 1 Cal.5th at p. 149.)

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

McKINSTER

Acting P. J.

SLOUGH

J.

18